## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | |
| | ) | |
| **NELSON DERMATOLOGY, PLLC** | ) | **Case No. 17-11536-BFK** |
| | ) | Chapter 11 |
| Debtor. | ) | |

## NELSON DERMATOLOGY, PLLC'S PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE DATED OCTOBER 31, 2017

## INTRODUCTION

Nelson Dermatology, PLLC respectfully proposes the following plan of reorganization under chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I hereof.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

### A.     *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     *"Administrative Claim"* means a Claim for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Professional Claim arising prior to the Effective Date; (c) all fees and charges assessed against the Estates under section 1930, chapter 123, of title 28, United States Code; and (d) all requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4) and (5) of the Bankruptcy Code.

**LAUREN FRIEND MCKELVEY (VSB No. 78813)**
**ALEXANDER M. LAUGHLIN (VSB No. 25237)**
**ODIN FELDMAN & PITTLEMAN PC**
**1775 Wiehle Avenue, Suite 400**
**Reston, Virginia 20190**
**Tel:   703-218-2135 (Ms. McKelvey)**
**Tel:   703-218-2134 (Mr. Laughlin)**
**Fax:   703-218-2160**
**Email: Lauren.McKelvey@ofplaw.com**
**Email: Alex.Laughlin@ofplaw.com**
*Counsel for Debtor and Debtor-in-Possession*

2.    *"Administrative Claim Bar Date"* means the first Business Day that is thirty (30) days after the Effective Date.

3.    *"Allowed'* means with reference to any Claim or Interest: (a) any Claim or Interest that is deemed or otherwise allowed pursuant to Section 502 of the Bankruptcy Code; and (c) any Claim or Interest expressly deemed allowed by the Plan.

4.    *"Assumed Lease"* means the Debtor's lease for the premises at 7960 Donegan Drive, Suite 217, Manassas, Virginia which the Debtor assumed pursuant to the order entered by the Bankruptcy Court on July 20, 2017.

5.    *"Available Cash"* means Net Cash Flow after payment of and reserve for post-Effective Date expenses, including, but not limited to, professional fees, if any.  Available Cash shall be calculated on a monthly basis for Creditors receiving monthly distributions under the Plan and on a quarterly basis for Creditors receiving quarterly distributions under the Plan.

6.    *"Avoidance Actions"* means any and all Claims and Causes of Action which the Debtor, the Debtor in Possession, the Estate, or other appropriate party in interest has asserted or may assert under sections 502, 510, 542, 544, 545, or 547 through 553 of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

7.    *"Bankruptcy Code"* means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as applicable to the Chapter 11 Case.

8.    *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of Virginia, having jurisdiction over the Chapter 11 Case.

9.    *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under 28 U.S.C. § 2075.

10.    *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

11.    *"Cash"* means the legal tender of the United States of America or the equivalent thereof.

12.    *"Causes of Action"* means all actions, causes of action (including Avoidance Actions), proceedings, controversies, claims, liabilities, obligations, rights, suits, debts, damages, judgments, remedies, powers, licenses, privileges, franchises, demands, setoffs, defenses, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct, indirect or derivative, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act, omission or event occurring on or before the Effective Date

2

and also includes, without limitation: (a) any right of setoff, counterclaim or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 of the Bankruptcy Code; (d) any claim or defense including but not limited to fraud, mistake, duress and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer or avoidance claim.

13.    *"Chapter 11 Case"* means the Debtor's bankruptcy case filed under Chapter 11 of the Bankruptcy Code as case number Case No. 17-11536-BFK in the Bankruptcy Court.

14.    *"Claim"* has the meaning set forth in section 101(5) of the Bankruptcy Code.

15.    *"Claims Bar Date"* means the deadlines established by the Bankruptcy Court for creditors to file proofs of claim, September 6, 2017 for all creditors, except governmental units, and November 1, 2017 for governmental units.

16.    *"Claims Objection Deadline"* means the first Business Day that is thirty (60) days after the Effective Date.

17.    *"Class"* means a category of Holders of Claims or Interests as set forth in Article III A hereof pursuant to section 1122(a) of the Bankruptcy Code.

18.    *"Confirmation"* means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

19.    *"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

20.    *"Confirmation Hearing"* means the hearing held by the Bankruptcy Court on confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

21.    *"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

22.    *"Creditor"* has the meaning set forth in Section 101(10) of the Bankruptcy Code.

23.    *"Cure Claim"* means a Claim based upon a monetary default, if any, by the Debtor under an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to sections 365 or 1123 of the Bankruptcy Code.

24.    *"Debtor"* or *"Debtor in Possession"* means Nelson Dermatology, PLLC, in its capacity as a debtor and debtor in possession in the Chapter 11 Case.

25.    *"Disallowed"* means all or that portion, as applicable, of any Claim against the Debtor that (i) has been disallowed by a Final Order of

3

the Bankruptcy Court; (ii) is listed in the Schedules with an amount of "$0" or "unknown," or as contingent, disputed or unliquidated, and as to which a proof of claim was not timely filed or deemed timely filed prior to the Claims Bar Date; (iii) has been agreed to be equal to $0 or to be expunged pursuant to any compromise or settlement; or (iv) is not listed on the Schedules and as to which a proof of claim was not timely filed or deemed timely filed prior to the Claims Bar Date.

26.    *"Disclosure Statement"* means the *Disclosure Statement for Nelson Dermatology, PLLC's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated October 31, 2017*, as the same may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto.

27.    *"Disputed"* means, with respect to any Claim or Interest: (a) any Claim or Interest that is not yet Allowed or Disallowed; (b) a Claim or Interest as to which an objection has been interposed; or (c) a Claim held by any Entity against which the Debtor or the Reorganized Debtor assert, or have the right to assert, an Avoidance Action.

28.    *"Distribution Date"* means any date upon which there is a distribution pursuant to the Plan.

29.    *"Effective Date"* means the first Business Day after the Confirmation Order becomes a Final Order.

30.    *"Entity"* shall have the meaning set forth in Section 101(15) of the Bankruptcy Code.

31.    *"Equity Interest"* means any equity security in Nelson Dermatology PLLC, whether or not transferable, and any option, warrant or right, contractual or otherwise, to acquire any such interest in a Debtor that existed immediately before the Effective Date.

32.    *"Estate"* means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

33.    *"Executory Contract"* means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

34.    *"Exculpated Parties"* means the Debtor and the Reorganized Debtor, and their respective officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other Professionals, in their capacities as such.

35.    *"Final Distribution Date"* means a day selected by the Reorganized Debtor in its sole discretion to make the final distribution of Cash or property to Holders of Allowed Claims under the Plan.

4

36. *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice, or as to which an appeal or motion for reargument or rehearing is pending, but no stay of the order is in effect.

37. *"General Unsecured Claims"* means any Unsecured Claim against the Debtor that is not an Administrative Claim, a Priority Tax Claim, an Other Priority Claim, a Professional Claim, or a Secured Claim.

38. *"Holder"* means any Person or Entity holding a Claim or an Interest.

39. *"Lien"* means a lien as defined in section 101(37) of the Bankruptcy Code.

40. *"Net Cash Flow"* means Cash generated from the operations of the Reorganized Debtor, less costs of sale, operating expenses, taxes, insurance, capital expenditures, and capital reserves.

41. *"New Value"* means $10,000 in Cash to be paid by the New Equity Holder between the Petition Date and the Effective Date, plus $25,000 to be paid by the New Equity Holder over a period of 60 months from the Effective Date at the rate of $5,000 per year.

42. *"New Equity Holder"* means Jennell E. Nelson.

43. *"New Membership Interests"* means 100% of the membership interests in the Reorganized Debtor.

44. *"Other Priority Claim"* means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim.

45. *"Person"* means a person as defined in section 101(41) of the Bankruptcy Code.

46. *"Petition Date"* means May 5, 2017 the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

47. *"Plan"* means this *Nelson Dermatology, PLLC's Plan of Reorganization of Under Chapter 11 of the Bankruptcy Code, dated October 31, 2017*, as the same may be amended, supplemented or modified from time to time.

48. *"Plan Supplement"* means the documents effectuating the provisions of the Plan, which documents shall be filed with the Bankruptcy Court not later than twenty-one (21) days prior to the Confirmation Hearing.

5

49.     *"Priority Tax Claim"* means any Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

50.     *"Pro Rata"* means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

51.     *"Professional"* means an Entity: (a) retained pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 363 and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

52.     *"Professional Claim"* means a Claim for Professional Compensation.

53.     *"Professional Compensation"* means, at any given moment, all accrued, contingent and/or unpaid fees and expenses for legal, financial advisory, accounting and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330(a) or 331 of the Bankruptcy Code before the Effective Date by any retained Professional in the Chapter 11 Case, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Bankruptcy Court has not denied by a Final Order, to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount).

54.     *"Rejection Claim Bar Date"* means the deadline for filing claims for rejection damages set forth in Article V of the Plan.

55.     *"Reorganized Debtor"* means Nelson Dermatology, PLLC, as reorganized under and pursuant to the Plan on and after the Effective Date.

56.     *"Unsecured Claim"* means a Claim that is not secured by a Lien on property in which the Debtor estate has an interest.

B.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the Commonwealth of Virginia, without giving effect to conflicts of law provisions, shall govern the rights, obligations, construction and implementation of this Plan, any agreement, documents, instruments or contracts executed or entered into in connection with this Plan (except as otherwise set forth in those agreements, in which case, the governing law of such agreement shall control).

C.     *References to the Debtor or the Reorganized Debtor*

Except as otherwise specifically provided in this Plan to the contrary, references in this Plan to the Debtor or the Reorganized Debtor shall mean the Debtor, and the Reorganized Debtor, as applicable, to the extent the context requires.

### D.    Exhibits and Schedules

All exhibits and schedules in the Plan Supplement are incorporated into and are a part of this Plan as if set forth in full herein.

## ARTICLE II
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Claims, Priority Tax Claims, and Other Priority Claims have not been classified and therefore are excluded from the Classes of Claims and Interests set forth in Article III.

### A.    Administrative Claims

#### 1.    General Administrative Claims

Except with respect to Professional Claims and except to the extent that a Holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment to such Holder, each Holder of an Allowed Administrative Claim against the Debtor shall be paid in full from Available Cash on the last to occur of: (i) the Effective Date; (ii) the date that such Administrative Claim is Allowed; and (iii) the date such Allowed Administrative Claim becomes due and payable; provided however that Allowed Administrative Claims that arise in the ordinary course of the Debtor' business ("*Excluded Allowed Administrative Expenses*") shall be paid in full in the ordinary course of business in accordance with their terms and conditions, subject to Available Cash. All requests for payment of an Administrative Claim that accrued on or before the Effective Date, other than Professional Claims and Excluded Allowed Administrative Expenses, must be filed with the Bankruptcy Court and served on counsel for the Debtor by the Administrative Claim Bar Date. Except as to Excluded Allowed Administrative Expenses and Professional Claims, any requests for payment of Administrative Claims that are not properly filed and served by the Administrative Claim Bar Date shall be disallowed automatically without the need for any objection from the Debtor or the Reorganized Debtor or any action by the Bankruptcy Court. The Reorganized Debtor, in its sole and absolute discretion, may settle Administrative Claims against the Estate in the ordinary course of business without further Bankruptcy Court approval. The Debtor and the Reorganized Debtor shall have the right to object to any Administrative Claim within sixty (60) days after the Effective Date, subject to extensions from time to time by the Bankruptcy Court. Unless the Debtor or the Reorganized Debtor object to a timely-filed and properly served Administrative Claim, such Administrative Claim will be deemed allowed in the amount requested.

#### 2.    Professional Claims

Holders of Professional Claims against the Debtor for services rendered before the Effective Date must file and serve on the Debtor and other Persons designated to receive service by the Bankruptcy Rules or order of the Bankruptcy Court, an application for final allowance of

such Professional Claim no later than thirty (30) days after the Effective Date. Allowed Professional Claims will be paid in full in Cash on the earlier of the Effective Date or of allowance of such Claims, or pursuant to such other less favorable terms as the parties may agree.

> B.      *Priority Tax Claims Paid Monthly*

Holders of Priority Tax Claims against the Debtor will receive the following treatment. Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid prior to the Effective Date, each Holder of an Allowed Priority Tax Claim shall, at the option of the Reorganized Debtor, receive on account of such Allowed Priority Tax Claim, subject to Available Cash and after satisfaction of Allowed Administrative Claims, either: (i) on the Effective Date, Cash in an amount equal to the Allowed Priority Tax Claim; (ii) deferred Cash payments from Available Cash of a total value, as of the Effective Date equal to the Allowed Priority Tax Claim, payable monthly over a period of time not to exceed five (5) years from the Petition Date with interest at an annual percentage rate of four percent (4%), or sooner at the option of the Reorganized Debtor; or (iii) such other treatment as may be agreed upon by the Holder and the Debtor, or the Reorganized Debtor or otherwise determined by order of the Bankruptcy Court.

> C.      *US Trustee Fees*

The Reorganized Debtor shall pay in full in Cash any fees due and owing to the US Trustee on or before the date of the Confirmation Hearing. On and after the Effective Date, the Reorganized Debtor shall pay the applicable US Trustee fees as they become due until the Chapter 11 case is converted, dismissed, or closed.

# ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of the Classes of Claims against and Equity Interests in the Debtor.

> A.      *Classification of Claims*

1.      <u>Class 1.</u> This Class consists of Allowed General Unsecured Claims. This Class is impaired and is entitled to vote on the Plan.

2.      <u>Class 2.</u> This Class consists of the Equity Interests of Jenell E. Nelson in Nelson Dermatology, PLLC.  This Class is impaired and is entitled to vote on the Plan.

> B.      *Summary of Status and Voting Rights*

Pursuant to section 1126(c) of the Bankruptcy Code, and except as otherwise provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims has accepted the Plan if the Holders of at least two-thirds in dollar amount and more than one-half in number of Allowed Claims in such Class actually voting have voted to accept the Plan.

> C.      *Treatment of Claims and Interests*

8

1.    <u>Class 1  Allowed General Unsecured Claims.</u> Class 1 Creditors will receive distributions of Available Cash aggregating up to 25% of their Allowed Claims, without interest, after satisfaction of Allowed Administrative Claims, Priority Tax Claims, and Other Priority Claims. Subject to Available Cash, Class 1 Creditors will receive quarterly distributions commencing no sooner than ninety (90) days after the Effective Date, and continuing thereafter until the earlier of the 5th anniversary of the Effective Date or the Creditors have received a 25% dividend, without interest, on account of their Allowed Claims.

2.    <u>Class 2 Equity Interests in Nelson Dermatology, PLLC.</u> The Equity Interests in the Debtor shall be cancelled on the Effective Date.

D.    *Less Favorable Treatment Upon Agreement of Holder of Claim or Interest*

The Debtor or Reorganized Debtor, as applicable, may agree with the Holders of any Claims or Interests in any Class, or any Administrative Claims, Professional Claims, Priority Tax Claims, and Other Priority Claims, to provide less favorable treatment than that provided in the Plan without further order from the Bankruptcy Court.

# ARTICLE IV
# MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Sources of Cash for Plan Distributions*

The Cash necessary for the Reorganized Debtor to make distributions to its Creditors pursuant to the Plan shall be obtained from the Net Cash Flow of the Reorganized Debtor.

B.    *Issuance of New Membership Interests in the Reorganized Debtor*

On the Effective Date, the New Membership Interests shall be issued to the New Equity Holder in exchange for the New Value. The issuance of the New Membership Interests is authorized without the need for any further company action or without any further action by a Holder of Claims or Interests.

All of the New Membership Interests issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.

The charter of the Reorganized Debtor, or other applicable document (including the certificate of New Membership Interests), shall contain a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

C.    *Exemption under Section 1145*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance and distribution of any New Membership Interests contemplated by the Plan and all agreements incorporated herein shall be exempt from, among other things, the registration requirements of section 5 of

the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution or sale of securities.

### D.   Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or any agreement, instrument or other document incorporated therein, on the Effective Date, all property of the Estate, all Causes of Action and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire or dispose of its property and compromise or settle its Claims, Interests or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided, however, the Bankruptcy Court shall retain jurisdiction as set forth herein.

### E.   Documentation; Further Transactions

On and after the Effective Date, the Reorganized Debtor and the officers, directors and or similar governing bodies thereof, are authorized to and may issue, execute, deliver, file or record such contracts, securities, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization or consents except for those expressly required pursuant to the Plan.

### F.   Exemption From Certain Taxes and Fees

To the maximum extent permitted by section 1146(a) of the Bankruptcy Code, any transfer from the Debtor or the Reorganized Debtor to any Entity pursuant to, in contemplation of or in connection with the Plan or pursuant to: (1) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtor or the Reorganized Debtor; (2) the creation, modification, consolidation or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; (3) the making, assignment or recording of any lease or sublease; or (4) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including an deeds, bills of sale, assignments or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### G.   Employee Benefits

On and after the Effective Date, the Reorganized Debtor may (1) honor, in the ordinary course of business, any contracts, agreements, policies, programs and plans for, among other things, compensation, health care benefits, disability benefits, deferred compensation benefits, travel benefits, savings, severance benefits, retirement benefits,

welfare benefits, workers' compensation benefits and accidental death and dismemberment insurance for its directors, officers and employees who served in such capacity at any time, and (2) honor in the ordinary course of business, Claims of employees employed as of the Effective Date for accrued vacation time and deferred compensation arising prior to the Petition Date. Nothing herein shall be construed to revive or restore any benefit under any policy, program or plan that expired prior to the Effective Date. Nothing in the Plan shall limit, diminish or otherwise alter the Debtor's and the Reorganized Debtor's defenses, claims, Causes of Action or other rights with respect to any contracts, agreements, policies, programs and plans. Notwithstanding the foregoing, pursuant to Section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits, if any, shall continue to be paid in accordance with applicable law.

### H.   Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released under the Plan, and the Reorganized Debtor shall have, retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtor, whether arising before or after the Petition Date, the Reorganized Debtor's right to commence, prosecute or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue its Causes of Action as it deems appropriate in accordance with the best interests of the Reorganized Debtor. No one may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor, the Reorganized Debtor, will not pursue any and all available Causes of Action against them. Unless any Causes of Action against any Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtor and the Reorganized Debtor reserve all rights to prosecute any and all Causes of Action against any Entity, and expressly reserve all Causes of Action, for later adjudication. Therefore, no preclusion doctrine, including but not limited to the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or latches, shall apply to such Causes of Action upon, after or as a consequence of Confirmation or consummation of the Plan.

## ARTICLE V
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.   Assumption of Executory Contracts and Unexpired Leases

The Debtor will assume those Executory Contracts and Unexpired Leases that are listed on Debtor's Schedule of Assumed Executory Contracts attached as an exhibit to the Plan Supplement. As of the Effective Date, the Debtor shall be deemed to have rejected each Executory Contract and Unexpired Lease to which it is a party unless such contract or lease (1) was previously assumed or rejected by the Debtor pursuant to an Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its own terms; (3) is the subject of a motion to assume that was pending on the Effective Date; or (4) is listed on the Debtor's Schedule of Assumed Executory Contracts attached as an exhibit to the Plan Supplement, as the same may be amended from time to time as provided herein.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions, assignments and rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date. Notwithstanding the foregoing, the Debtor shall

have the right to amend the Debtor's Schedule of Assumed Executory Contracts, attached as an exhibit to the Plan Supplement, at any time prior to the Effective Date.

*B.     Payments Related to Assumption of Executory Contracts and Unexpired Leases*

Any Cure Claim related to an Executory Contract or Unexpired Lease to be assumed pursuant to this Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount upon such terms as the parties to such Executory Contracts or Unexpired Leases shall agree, or if no agreement is reached upon such terms as are approved by the Bankruptcy Court. The Debtor or the Reorganized Debtor shall file and serve a Plan Supplement with the Bankruptcy Court listing the cure amounts for all Cure Claims. The parties to such Executory Contracts and Unexpired Leases must object to such cure amounts by the deadline to object to Confirmation of the Plan.

*C.     Rejection Damages Claims*

Absent an Order of the Bankruptcy Court specifying a different date by which a party to a rejected Executory Contract or Unexpired Lease must file a Claim for rejection damages (in which case, the date set forth in such Order shall be the deadline for filing such Claims), all proofs of Claim with respect to Claims arising from the rejection of any Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served upon counsel for the Reorganized Debtor within thirty (30) days after the Effective Date ("*Rejection Claim Bar Date*"). Any Claim arising from the rejection of any Executory Contract or Unexpired Lease that becomes an Allowed Claim is classified and shall be treated as a Class A2 General Unsecured Claim. Any Claim arising from the rejection of an Executory Contract or Unexpired Lease that is not filed within the time required by this section will be forever barred from assertion against the Debtor, the Reorganized Debtor, the Estates or property of the Debtor, the Reorganized Debtor or the Estates.

*D.     Modifications*

Unless otherwise provided in this Plan, each Executory Contract and Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease.

*E.     Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease on the Debtor's Schedule of Assumed Executory Contracts attached as an exhibit to the Plan Supplement nor anything contained in this Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any the Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have sixty (60) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

# ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.    Timing of Distributions*

Subject to Available Cash, monthly distributions of Allowed Priority Tax Claims shall commence on the fifteen (15th) day of the first full month after the Effective Date and continue every month thereafter until paid as provided in Article II of the Plan. Subject to Available Cash, quarterly distributions of Allowed General Unsecured Claims shall commence on the fifteen (15th) day of the first full month that is ninety (90) days after the Effective Date and continue every quarter of a year thereafter until paid as provided in Article III of the Plan. Distributions on account of Professional Claims shall be made as soon as reasonably practicable after their Allowance, or as agreed by the Holder of the Professional Claim and the Debtor or Reorganized Debtor. Notwithstanding anything herein to the contrary, the Reorganized Debtor may alter the timing of the distributions to make the distributions within thirty (30) days of when the distribution should have been made.

*B.    Post-petition Interest*

Unless expressly provided in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on account of any Claim.

*C.    Record Date for Distributions*

On the Effective Date, the Reorganized Debtor shall be authorized to recognize and deal only with those Holders of Claims listed on the Debtor's books and records, as of the close of business on the Effective Date. Accordingly, the Reorganized Debtor will have no obligation to recognize the transfer of, sale of or any participation in any Allowed Claim that occurs after the Effective Date, and will be entitled for all purposes herein to recognize and make distributions only to those Holders of Allowed Claims who are Holders of such Claims as of the close of business on the Effective Date.

*D.    Delivery of Distributions*

1.    General

Except as otherwise provided herein, distributions to Holders of Allowed Claims shall be made at the address for each such Holder as indicated in the Debtor's records as of the date of any such distribution, which address shall be the address on the proof of claim of the Holder, unless the Holder subsequently provided a different address to the Debtor or the Reorganized Debtor, as applicable, in writing.

2.    De Minimis Distributions

If Available Cash for a month or quarter, as applicable, is less than one-thousand dollars ($1,000), then the Reorganized Debtor may hold such Available Cash and apply it to the next applicable distribution.  If a distribution to a Creditor is less than ten dollars ($10), then the Reorganized Debtor may hold such distribution and apply it to the next applicable distribution.

3.    Undeliverable Distributions and Unclaimed Property

13

a.      Undeliverable Distributions

In the event that any distribution to any Holder of a Claim or Interest is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtor has been apprised of the then current address of such Holder, at which time such distribution shall be made to such Holder, without interest; provided however, such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the applicable Distribution Date. Nothing herein shall require the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim.

b.      Unclaimed Distributions

Checks issued by the Reorganized Debtor on account of Allowed Claims shall be null and void if not negotiated within one hundred eighty (180) days after the issuance of such check. Requests for reissuance of any check shall be made directly to the payor by the Holder of the relevant Allowed Claim with respect to which such check originally was issued. Any Holder of an Allowed Claim holding an un-negotiated check that does not request reissuance of such un-negotiated check from the payor within one hundred eighty (180) days after the issuance of such check shall have its Claim discharged and be discharged and forever barred, estopped and enjoined from asserting any such Claim against the Reorganized Debtor or its property. In such cases, Cash held for payment on account of such Claims shall be property of the Reorganized Debtor, free of any Claims or Interests of such Holder.

E.      *Compliance with Tax Requirements/Allocations*

In connection with this Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision of this Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (i) liquidating a portion of the distributions to be made under this Plan to generate sufficient funds to pay applicable withholding taxes, (ii) withholding distributions pending receipt of information necessary to facilitate such distributions or (iii) establishing any other mechanisms or protocols they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate distributions made under this Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens and encumbrances.

F.      *Allocation of Plan Distributions Between Principal and Interest*

Except as otherwise provided herein, distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest (where applicable).

G.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid

14

Allowed Claims shall be reduced, and Disallowed without a Claim objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not the Reorganized Debtor. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not the Reorganized Debtor on account of such Claim, such Holder shall, within two (2) weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor to the extent that the Holder's total recovery on account of such Claim from the third party and under this Plan exceeds the Allowed amount of such Claim as of the date of any distribution under this Plan.

2.    Insured Claims

All pre-Effective Date Claims that are covered by one or more insurance policies of the Debtor or the Reorganized Debtor *("Insured Claims"),* and that have not previously been Allowed by Final Order of the Bankruptcy Court are Disputed Claims. Any Insured Claim determined and liquidated shall be deemed a Claim against the Debtor in such liquidated amount and satisfied in accordance with the Plan, provided however, that such Claim shall be paid exclusively from the insurance proceeds available to satisfy such liquidated amount.

3.    Applicability of Insurance Policies

Except as otherwise provided in this Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

*H.    Surrender of Instruments*

As a condition to receiving any distribution under the Plan, each Holder of an instrument or note shall be deemed to have surrendered the certificates or other documentation underlying each such Claim or Equity Interest, and all surrendered certificates and other documents shall be deemed to be canceled pursuant to this Plan, except to the extent otherwise provided herein.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

*A.    Objection to Claims; Settlement*

The Reorganized Debtor shall have the exclusive authority to file, settle, compromise, withdraw or litigate to judgment any objections to Claims as permitted under this Plan. From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court. The Debtor and the Reorganized Debtor also reserve the right to resolve any Disputed Claim outside the Bankruptcy Court under applicable governing law. Any objections to Claims shall be filed on or before sixty (60) days after the Effective Date ("*Claims Objection Deadline*"),

15

unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter. The Claims Objection Deadline may be extended from time to time by order of the Bankruptcy Court.

### B.    Estimation of Claims and Equity Interests

The Debtor and the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether there has been a previous objection to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim including without limitation, during the pendency of an appeal relating to any such objection. In the event that the Bankruptcy Court estimates any Claim, the amount so estimated shall constitute the maximum limitation on such Claim for all purposes, as determined by the Bankruptcy Court, and the Debtor and the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim, provided however, that such limitation shall not apply to Claims that are estimated solely for voting purposes. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or otherwise resolved by any mechanism approved by this Plan or by the Bankruptcy Court.

### C.    No Recourse

No Holder of any Disputed Claim that becomes an Allowed Claim in any applicable Class shall have recourse against the Debtor and the Reorganized Debtor or any other Holder of an Allowed Claim or any of their respective professional consultants, advisors, officers, directors or members or their successors or assigns, or any of their respective property, if the Cash or other property allocated to such Class and not previously distributed are insufficient to provide a distribution to such Holder in the same proportion to that received by other Holders of Allowed Claims in such Class. However, nothing in the Plan shall modify any right of a Holder of a Claim under section 502(j) of the Bankruptcy Code.

### D.    No Distribution Pending Allowance

Notwithstanding any provision to the contrary in this Plan and except as otherwise agreed by the relevant parties: (a) no partial payments and no partial distributions shall be made with respect to any Disputed Claims until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order; (b) any Entity that holds both an Allowed Claim and a Disputed Claim shall not receive any distribution on the Allowed Claim unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order and the Disputed Claims have been Allowed or eliminated; and (c) pursuant to Bankruptcy Code section 502(d), the Claims of a Creditor or transferee of property who may be obligated to an Estate shall be disallowed, and such Creditor or transferee shall receive no distribution under the Plan, until such Creditor or transferee pays all amounts owed to the Estate.

### E.    No Amendments to Claims

On or after the Confirmation Date, the Holder of a Claim (other than an Administrative Claim or a Professional Claim) must obtain prior authorization from the Bankruptcy Court or

the Debtor to file or amend a Claim. Any new or amended Claim (other than a Rejection Claim filed by the Rejection Claim Bar Date) filed after the Confirmation Date without such authorization will not appear on the register of claims in the Chapter 11 Case and will be deemed Disallowed in full and expunged without any action required of the Debtor or the Reorganized Debtor and without the need for any court order.

## ARTICLE VIII
## EFFECTIVE DATE

### A.    *Effective Date*

The Plan shall become effective on the first Business Day after the date on which the Confirmation Order becomes a Final Order.

### B.    *Nonoccurrence of Effective Date*

If the Effective Date of this Plan does not occur, this Plan shall be null and void in all respects and nothing contained in this Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by or against or Interests in the Debtor; (2) prejudice in any manner the rights of the Debtor, any Holders or any other Entity; or (3) constitute an admission, acknowledgement, offer or undertaking by the Debtor, any Holders or any other Entity in any respect.

## ARTICLE IX
## EFFECTS OF CONFIRMATION

### A.    *Vesting of Assets*

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor's bankruptcy estate and any property acquired by a Debtor or the Reorganized Debtor under the Plan shall vest in the Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided herein. On and after the Effective Date, the Reorganized Debtor may operate its business, conduct its affairs and use, acquire or dispose of property and compromise or settle any Claims without the supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtor may pay the charges that they incur on and after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to, or approval of, the Bankruptcy Court.

### B.    ***Discharge of Claims and Cancellation of Equity Interests; Injunction***

**On the Effective Date of this Plan, the Debtor will be discharged from any and all pre-Effective Date debts and Claims, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, except that the Debtor will not be discharged of any debt or Claim: (i) imposed by this Plan; (ii) of a kind specified in section 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Bankruptcy Rules; or (iii) of a kind specified in section 1141(d)(6)(B).**

17

**Except as provided in any other provision of the Plan, on the Effective Date, all existing Equity Interests in the Debtor shall be deemed to be to be terminated.**

**The satisfaction, releases, and discharge pursuant to Article X of this Plan shall also act as an injunction against any Holder of a Claim or an Interest commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action satisfied, released, or discharged under this Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof. Except as provided in this Plan or as expressly approved by the Reorganized Debtor, each Holder of a Claim or an Interest shall be precluded and enjoined from asserting against the Reorganized Debtor or the Reorganized Debtor's assets, any other or further Claim based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.**

C.    *Binding Effect*

On and after the Confirmation Date, and subject to the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, the Debtor and its respective heirs, executors, affiliates, officers, directors, managers, agents, representatives, attorneys, beneficiaries, guardians, successors and assigns, whether or not the Claim or Equity Interest of such Holder is impaired under the Plan and whether or not such Holder has accepted the Plan.

D.    *Term of Injunction or Stay*

Unless otherwise provided herein, all injunctions or stays arising under section 105 or 362 of the Bankruptcy Code, any order entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date or the date indicated in such order.

E.    *Injunction Against Interference with Plan*

**Upon the entry of the Confirmation Order with respect to the Plan, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors or principals, shall be enjoined from taking any action to interfere with the implementation or consummation of the Plan.**

F.    *Release By Holders of Claims and Interests*

**On and after the Effective Date, each Holder of a Claim or an Interest shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged the Debtor and the Reorganized Debtor from any and all Claims, Interests, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such Person or Entity is entitled to assert based in whole or in part upon any act, omission, transaction, agreement, event or occurrence taking place on or prior to the Effective Date, provided however, that the foregoing release shall not operate to waive or release any claims (1) based upon any post-**

18

Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; and (2) with respect to distributions on account of Allowed Claims against the Reorganized Debtor pursuant to the Plan.

### G.  *Exculpation*

The Exculpated Parties shall have no liability to any Holder of a Claim or an Interest for any act taken or omission made in connection with, or arising out of, the Chapter 11 Case, the Disclosure Statement, this Plan or the formulation, negotiation, preparation, dissemination, implementation or the administration of this Plan, any instrument or agreement created or entered into in connection with this Plan, any other act taken or omitted to be taken in connection with, or in contemplation of, any of the restructuring or other transactions contemplated by this Plan, and the property to be distributed or otherwise transferred under this Plan; unless such Holder of a Claim or an Interest obtains the prior approval of the Bankruptcy Court to bring such a claim. Nothing in this section or elsewhere in this Plan shall release, discharge or exculpate any non-Debtor party from (a) any claim owed to the United States government or its agencies, including any liability arising under the Internal Revenue Code or criminal laws of the United States, or (b) any Claim of any Holder of a Claim or an Interest except as expressly set forth herein.

## ARTICLE X
## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Case and the Plan for, among other things, the following purposes:

(a)     To hear and determine motions for the assumption or rejection of Executory Contracts and Unexpired Leases and the allowance or disallowance of Claims resulting therefrom;

(b)     To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To ensure that distributions to Holders of Allowed Claims are accomplished as provided herein;

(d)     To hear and determine objections to Claims;

(e)     To hear and determine Claims, including but not limited to the allowance, classification, priority, compromise, estimation or payment of any Claim, Administrative Expense Claim, Disputed Claim or Equity Interest;

(f)     To enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is for any reason, stayed, reversed, revoked, modified or vacated;

(g)     To issue injunctions, enter and implement any other order, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

(h)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement for the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To hear and determine all applications under sections 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following the Effective Date;

(l)     To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation and similar Claims pursuant to section 105(a) of the Bankruptcy Code;

(m)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(n)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including any requests for expedited terminations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Petition Date through, and including, the Final Distribution Date);

(o)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and Title 28 of the United States Code;

(p)     To recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

(q)     To hear and determine Causes of Action, including but not limited to Avoidance Actions; and

(r)     To enter a final decree closing this Chapter 11 case.

# ARTICLE XI
# MISCELLANEOUS PROVISIONS

A.     *Payment of Statutory Fees*

On and after the Effective Date, and thereafter as may be required until entry of a final decree with respect to the Debtor, the Debtor shall pay all fees payable pursuant to section 1930 of Chapter 123 of Title 28 of the United States Code until the Chapter 11 Case is dismissed, converted, or closed.

B.     *Amendments*

1.     Plan Modifications. The Plan may be amended, modified or supplemented by the Debtor or the Reorganized Debtor in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of Holders of Claims or Equity Interests under the Plan, the Debtor may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.

2.     Other Amendments. Prior to the Effective Date, the Debtor may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Equity Interests.

C.     *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtor take such action, the Plan shall be deemed null and void.

D.     *Severability*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms of the Plan will remain in full force and effect and in no way will be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

E.     *Request for Expedited Determination of Taxes.*

21

The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed or to be filed for any and all taxable periods ending after the Petition Date through the Effective Date.

F.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtor, shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, or in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Nelson Dermatology, PLLC
Attn: Dr. Jennell E. Nelson
7960 Donegan Drive #217
Manassas, VA 20109

-and-

Lauren Friend McKelvey
Attorney for Nelson Dermatology, PLLC
ODIN, FELDMAN & PITTLEMAN, P.C.
1775 Wiehle Ave., Suite 400
Reston, Virginia 20190
(703) 218-2135 (direct line)
(703) 218-2160 (fax)
Email: lauren.mckelvey@ofplaw.com

Dated: October 31, 2017

*/s/ Dr. Jennell E. Nelson*
Dr. Jennell E. Nelson
Managing Member, Nelson Dermatology, PLLC


*/s/ Lauren Friend McKelvey*
LAUREN FRIEND MCKELVEY (VSB No. 78813)
ALEXANDER M. LAUGHLIN (VSB No. 25237)
ODIN FELDMAN & PITTLEMAN PC
1775 Wiehle Avenue, Suite 400
Reston, Virginia 20190
Tel:     703-218-2135 (Ms. McKelvey)
Tel:     703-218-2134 (Mr. Laughlin)
Fax:    703-218-2160
Email: Lauren.McKelvey@ofplaw.com
Email: Alex.Laughlin@ofplaw.com
*Counsel for Debtor and Debtor-in-Possession*

#3608118v2  081318/000007